IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| LASHAWN POTTS<br>1205 Half Street, S.E., Unit 502<br>Washington, D.C. 20003 | * | |
| Plaintiff | * | |
| v. | * | Case No. _____ |
| EXCALIBUR ASSOCIATES, INC.<br>11 College Street, Suite B<br>Ellijay, Georgia 30540 | * | |
| Serve: CSC-Lawyers Incorporating<br>Service Company<br>7 St. Paul Street, Suite 820<br>Baltimore, Maryland 21202 | * | |
| Defendant | * | **JURY TRIAL DEMANDED** |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff, LaShawn Potts ("Plaintiff"), in the above-entitled action, by and through her undersigned counsel, hereby demands judgment against Defendant, Excalibur Associates Inc. ("Defendant"), in the amounts set forth below, and as her Complaint, states as follows:

### PARTIES, JURISDICTION & VENUE

1. Plaintiff, LaShawn Potts, is an adult resident and citizen of the District of Columbia, eighteen years of age or older at the time of this filing and has a current residence and domicile at 1205 Half Street, Southeast, Unit 502, Washington, D.C. 20003. For subject matter jurisdiction purposes, Plaintiff is a citizen of the District of Columbia, where she is domiciled.

2. On information and belief, Defendant, Excalibur Associates, Inc., is a Colorado corporation, owned and operated under the laws of the state of Colorado, and has a principal place of business at 11 College Street, Suite B, Ellijay, Georgia 30540. For subject matter jurisdiction

purposes, on information and belief, Defendant is a citizen of Colorado and Georgia, its state of incorporation and the state in which its principal place of business is located.

3. This Court has subject matter jurisdiction over this action pursuant to Md. Code Ann., Cts. & Jud. Proc. § 1-501.

4. This Court has personal jurisdiction over the parties to this action pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 6-103(b)(1) and/or (2), because Defendant transacts business, performs work, and contracts to supply goods or services in Maryland.

5. Venue is proper in this Court pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 6-201(a) and/or 6-202(11), because Defendant carries on regular business in Montgomery County.

## FACTS COMMON TO ALL COUNTS

6. On July 11, 2022, Defendant hired Plaintiff as a full-time, non-exempt Dispatcher to work on Defendant's federal government contract with the United States Department of Commerce (the "Government") at the Government's National Institute of Standards Technology ("NIST") headquarters in Gaithersburg, Montgomery County, Maryland.

7. Plaintiff's offer letter from Defendant confirmed that her hire date was July 11, 2022.

8. Plaintiff's offer letter from Defendant explained that she would receive a rate of pay of $26.75 per hour, plus $4.23 in health and welfare benefits per hour worked, for a total of $30.98 per hour.

9. Plaintiff's offer letter confirms that she was to be paid semi-monthly on the 6th and 21st days of each month.

10. Plaintiff's offer letter also indicates that she would be paid $15.00 for all "pre-employment training" and that, if Plaintiff did "not successfully complete or pass the required

training, [Defendant] will not compensate [her] for the training time." Furthermore, Plaintiff's offer letter stated that "[i]f employed less than one year, [Plaintiff] will be required to pay back all training pay and training costs incurred as well as costs of uniforms."

11. Plaintiff accepted her offer of employment and was onboarded by Defendant on July 11, 2022, making her an employee of Defendant.

12. On or about July 12, 2022, Carrie S. McCoy ("Ms. McCoy"), Vice President of Human Resources for Defendant, confirmed in writing that Plaintiff's onboarding was complete.

13. Upon beginning her duties as a Dispatcher, Plaintiff was expected to work 40 hours per week (Monday through Friday, 11:00 p.m. to 7:00 a.m.).

14. On July 13, 2022, Plaintiff exchanged emails with Amanda Pederson ("Ms. Pederson"), Operatives Service Manager for Defendant. Plaintiff asked whether a specific training, APCO public safety training ("APCO training"), was going to be paid.

15. Ms. Pederson responded by email and confirmed that the APCO training is paid training.

16. In addition, on or about July 9, 2022, prior to Plaintiff's employment start-date, Ms. Pederson informed Plaintiff that APCO training was required for performance on Defendant's contract with the Government. However, that training could be completed any time during the first six months of contract performance; it did not have to be completed before Plaintiff began performing her job duties at NIST headquarters for Defendant.

17. On or about July 18, 2022, Leo Runnels ("Mr. Runnels"), Vice President of Operations for Defendant, informed Plaintiff that she needed to begin her APCO training. He confirmed: "I will be paying you for 40 hours to do the [APCO] class."

18. Over the course of July 12, 2022 through August 1, 2022, Plaintiff spent at least 55

hours completing training courses for Defendant and an additional 3 hours on employment-related tasks, including getting fingerprinted and attending mandatory training related to laptop access for her position.

19. The vast majority of the training hours Plaintiff completed were performed from her home in Washington, D.C.

20. Because Plaintiff had already become an employee of Defendant, all 58 hours should have been paid at a rate of $26.75 per hour, and she should have received health and welfare benefits of an additional $4.23 per hour, for a total of $30.98 per hour.

21. July 21 came and went, but Defendant did not pay Plaintiff for her time working prior to that date.

22. On or around July 29, 2022, Plaintiff asked Mr. Runnels how to report her time worked for the training, in case that was the reason for non-payment. Mr. Runnels responded that he would take care of it for her.

23. On or around July 30, 2022, Mr. Runnels spoke with Plaintiff by telephone. He informed her, contrary to his and Ms. Pederson's prior statements, that he would not pay her for the APCO training until after she had passed the APCO exam (which had been postponed).

24. The failure to pay Plaintiff during her employment created a substantial financial hardship on Plaintiff, so much so that Defendant's failure to pay in accordance with applicable law left Plaintiff with no choice but to resign from her employment.

25. On or about July 30, 2022, Plaintiff sent an email to Defendant that said "[e]ffective 07/30/2022, I'm resigning from the Dispatcher position due to no pay. . . . This process has caused me a significant loss of income and daycare arrangements that wasn't expected. . . . This process has been lengthy with numerous trainings and to not be paid is unacceptable."

26. On or about July 31, 2022, Plaintiff reported to Mr. Runnels that she could not continue to work for Defendant without pay.

27. On or about August 1, 2022, Mr. Runnels responded and again informed Plaintiff that she would not be paid for the APCO training if she did not complete the final examination but requested that she reconsider her resignation.

28. Plaintiff responded that she had been made aware that another employee had been permitted to take the APCO exam the day before, but she had not been given the opportunity to do so.

29. On or about August 1, 2022, by return email, Plaintiff indicated that she was willing to discuss continued employment by Defendant if Defendant agreed to pay her in accordance with applicable law.

30. That same day, August 1, 2022, Ms. McCoy notified Plaintiff that Defendant was revoking her offer of employment. In addition, Ms. McCoy confirmed that Defendant would not pay Plaintiff for 45-46 hours of APCO training. Ms. McCoy explained that Defendant considered the APCO training to be "pre-employment" training, despite the fact that it occurred after Plaintiff had been onboarded and become an employee of Defendant and despite multiple representatives of Defendant affirming in writing that the APCO training would be paid for.

31. The APCO training began and ended after Plaintiff was onboarded; none of the training was conduct prior to Plaintiff's employment.

32. Defendant's contract with the Government was subject to the requirements of the McNamara-O'Hara Service Contract Act of 1965, 41 U.S.C. §§ 6701 – 6707 ("SCA"). The SCA mandates that if training is required by an SCA federal contract, as the APCO training was for Defendant's contract, the contractor (in this case Defendant) is required to pay wages for the

training time.

33. On or about August 6, 2022, Defendant paid Plaintiff for 5 hours of work at a rate of $26.75 per hour, or $133.75 before taxes. It did not pay Plaintiff for any health and welfare benefits (although they were required to be paid at $4.23 per hour) or for the remaining over-53 hours of work Plaintiff performed at Defendant's direction during her employment after her onboarding.

34. Payment for all hours worked, including health and welfare benefits, was required by the Fair Labor Standards Act, SCA, Maryland Wage and Hour Law, Maryland Wage Payment and Collection Law, District of Columbia Minimum Wage Act, District of Columbia Wage Payment and Collection Law, and other applicable statutes and regulations. However, Defendant failed to fully compensate Plaintiff in accordance with these laws and regulations.

35. Pursuant to Maryland law, Defendant was required to pay Plaintiff for all wages due for work that Plaintiff performed prior to the end of her employment on or before the date on which she would have been paid had her employment not terminated – in this case, August 6, 2022.

36. More than two weeks have passed since Defendant was required to pay Plaintiff all wages due to her. But, Defendant has not paid Plaintiff all wages due.

37. Defendant's failure to pay Plaintiff all wages due to her is not a result of a bona fide dispute. The failure to pay is in direct conflict with written statements by multiple representatives of Defendant with authority to bind the company. In addition, as a federal contractor with a contract subject to the SCA, Defendant has a duty to understand the wage payment requirements of the SCA at all times and knew or should have known that all training is required to be compensated.

38. Maryland law does not permit Defendant to modify wage payment requirements by offer letter or other agreement; any attempt to avoid paying wages by agreement is void.

## CAUSES OF ACTION

### COUNT I – VIOLATIONS OF THE FAIR LABOR STANDARDS ACT ("FLSA")

39. Plaintiff incorporates by reference Paragraphs 1 through 38 of this Complaint as if fully set forth and restated herein.

40. At all times relevant hereto, Defendant was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

41. At all times relevant hereto, Defendant was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

42. At all times relevant hereto, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials, such as cell phones and computers, that have been moved in or produced for commerce.

43. At all relevant times, Defendant has had an annual gross volume of sales made or business done of not less than $1,000,000.00 each year.

44. At all times relevant hereto, Plaintiff and other employees of Defendant were engaged in commerce or in the production of goods for commerce on behalf of Defendant.

45. At all times relevant hereto, Defendant employed Plaintiff within the meaning of the FLSA.

46. From July 11, 2022 to August 1, 2022, Defendant failed to pay Plaintiff the required federal, state, and local minimum wage, as well as the specific wage promised to Plaintiff, for all

hours worked.

47. Defendant only paid Plaintiff for 5 of the over-58 hours of work she performed for Defendant during that time, and the failure to pay violated the FLSA.

48. Defendant has acknowledged that it has a pattern and practice of not paying employees for certain types of training, including APCO training, that employees, including Plaintiff, are required to perform as part of their employment.

49. Defendant's federal contract is subject to the SCA, which establishes that Defendant must compensate employees for any training they receive that is required for the contract.

50. APCO training was required for Defendant's contract with the Government, therefore it was required to be compensated for all employees taking the training.

51. Defendant knowingly, willfully, or in reckless disregard, carried out its illegal practice of not paying for employee training hours.

52. Defendant's failure to pay wages lawfully owed to employees was neither reasonable, nor was the decision not to pay wages made in good faith. To the contrary, the non-payment was made in bad faith, particularly in light of the fact that multiple representatives of Defendant informed Plaintiff that she would be paid for her training in writing.

53. As a result of Defendant's violation of the FLSA and willful non-payment of wages, Plaintiff is entitled to recovery of her unpaid wages, plus liquidated damages, attorneys' fees, and costs.

### COUNT II – VIOLATIONS OF THE MARYLAND WAGE AND HOUR LAW ("MWHL")

54. Plaintiff incorporates by reference Paragraphs 1 through 53 of this Complaint as if fully set forth and restated herein.

55. At all times relevant hereto, Defendant "employed" Plaintiff for purposes of the MWHL because it engaged Plaintiff to work, allowed Plaintiff to work, and instructed Plaintiff to be present at a work site both in Maryland and in the District of Columbia.

56. Pursuant to the MWHL, each employer must pay employees at a rate that is no less than the Maryland minimum wage, currently $12.50 per hour and the Montgomery County, Maryland minimum wage for large employers (over 50 employees), currently $15.65 per hour.

57. From July 11, 2022 to August 1, 2022, Defendant failed to pay Plaintiff the required federal, state, and local minimum wage, as well as the specific wage promised to Plaintiff, for all hours worked.

58. Defendant only paid Plaintiff for 5 of the over-58 hours of work she performed for Defendant during that time, and the failure to pay violated the MWHL.

59. Defendant has acknowledged that it has a pattern and practice of not paying employees for certain types of training, including APCO training, that employees, including Plaintiff, are required to perform as part of their employment.

60. Defendant's federal contract is subject to the SCA, which establishes that Defendant must compensate employees for any training they receive that is required for the contract.

61. APCO training was required for Defendant's contract with the Government, therefore it was required to be compensated for all employees taking the training.

62. Defendant knowingly, willfully, or in reckless disregard, carried out its illegal practice of not paying for employee training hours.

63. Defendant's failure to pay wages lawfully owed to employees was neither reasonable, nor was the decision not to pay wages made in good faith. To the contrary, the non-

payment was made in bad faith, particularly in light of the fact that multiple representatives of Defendant informed Plaintiff that she would be paid for her training in writing.

64. As a result of Defendant's violation of the MWHL and willful non-payment of wages, Plaintiff is entitled to recovery of her unpaid wages, plus liquidated damages, attorneys' fees, and costs.

## COUNT III – VIOLATIONS OF THE MARYLAND WAGE PAYMENT AND COLLECTION LAW ("MWPCL")

65. Plaintiff incorporates by reference Paragraphs 1 through 64 of this Complaint as if fully set forth and restated herein.

66. At all times relevant hereto, Defendant "employed" Plaintiff for purposes of the MWPCL because it engaged Plaintiff to work, allowed Plaintiff to work, and instructed Plaintiff to be present at a work site both in Maryland and in the District of Columbia.

67. Pursuant to the MWPCL, all employers must pay all employees all wages due for work that the employee performed before the end of their employment on or before the day on which the employee would have been paid the wages if the employment had not ended.

68. From July 11, 2022 to August 1, 2022, Defendant failed to pay Plaintiff the required federal, state, and local minimum wage, as well as the specific wage promised to Plaintiff, for all hours worked.

69. Defendant only paid Plaintiff for 5 of the over-58 hours of work she performed for Defendant during that time.

70. Payment for all wages due to Plaintiff was required on or before August 6, 2022.

71. Defendant failed to pay Plaintiff for all wages due on or before August 6, 2022.

72. Defendant has acknowledged that it has a pattern and practice of not paying employees for certain types of training, including APCO training, that employees, including

Plaintiff, are required to perform as part of their employment.

73. Defendant's federal contract is subject to the SCA, which establishes that Defendant must compensate employees for any training they receive that is required for the contract.

74. APCO training was required for Defendant's contract with the Government, therefore it was required to be compensated for all employees taking the training.

75. Defendant knowingly, willfully, or in reckless disregard, carried out its illegal practice of not paying for employee training hours.

76. Defendant's failure to pay wages lawfully owed to employees was neither reasonable, nor was the decision not to pay wages made in good faith. To the contrary, the non-payment was made in bad faith, particularly in light of the fact that multiple representatives of Defendant informed Plaintiff that she would be paid for her training in writing.

77. More than two weeks has passed since the date on which Plaintiff's wages were required to be paid, but Defendant has not paid them, in violation of the MWPCL.

78. As a result of Defendant's violation of the MWHL and willful non-payment of wages, Plaintiff is entitled to recovery of her unpaid wages, plus liquidated damages, attorneys' fees, and costs.

79. Defendant's failure to pay Plaintiff all wages due to her is not a result of a bona fide dispute. The failure to pay is in direct conflict with written statements by multiple representatives of Defendant with authority to bind the company. In addition, as a federal contractor with a contract subject to the SCA, Defendant has a duty to understand the wage payment requirements of the SCA at all times and knew or should have known that all training is required to be compensated.

## COUNT IV – VIOLATIONS OF THE DISTRICT OF COLUMBIA MINIMUM WAGE ACT ("DCMWA")

80. Plaintiff incorporates by reference Paragraphs 1 through 79 of this Complaint as if fully set forth and restated herein.

81. At all times relevant hereto, Defendant was Plaintiff's employer for purposes of the DCMWA because it suffered or permitted Plaintiff to work for it or on its behalf.

82. At all times relevant hereto, Defendant required Plaintiff to engage in certain training, including APCO training, which Defendant permitted and/or required Plaintiff to perform from her home in the District of Columbia.

83. The vast majority of the training hours Plaintiff provided to Defendant were performed from her home in the District of Columbia.

84. Pursuant to the DCMWA, each employer must pay employees at a rate that is no less than the District of Columbia minimum wage, currently $16.10.

85. From July 11, 2022 to August 1, 2022, Defendant failed to pay Plaintiff the required federal, state, and local minimum wage, as well as the specific wage promised to Plaintiff, for all hours worked.

86. Defendant only paid Plaintiff for 5 of the over-58 hours of work she performed for Defendant during that time, and the failure to pay violated the DCMWA.

87. Defendant has acknowledged that it has a pattern and practice of not paying employees for certain types of training, including APCO training, that employees, including Plaintiff, are required to perform as part of their employment.

88. Defendant's federal contract is subject to the SCA, which establishes that Defendant must compensate employees for any training they receive that is required for the

contract.

89. APCO training was required for Defendant's contract with the Government, therefore it was required to be compensated for all employees taking the training.

90. Defendant knowingly, willfully, or in reckless disregard, carried out its illegal practice of not paying for employee training hours.

91. Defendant's failure to pay wages lawfully owed to employees was neither reasonable, nor was the decision not to pay wages made in good faith. To the contrary, the non-payment was made in bad faith, particularly in light of the fact that multiple representatives of Defendant informed Plaintiff that she would be paid for her training in writing.

92. As a result of Defendant's violation of the DCMWA and willful non-payment of wages, Plaintiff is entitled to recovery of her unpaid wages, plus liquidated damages, attorneys' fees, and costs.

### COUNT V – VIOLATIONS OF THE DISTRICT OF COLUMBIA WAGE PAYMENT AND COLLECTION LAW ("DCWPCL")

93. Plaintiff incorporates by reference Paragraphs 1 through 92 of this Complaint as if fully set forth and restated herein.

94. At all times relevant hereto, Defendant "employed" Plaintiff for purposes of the DCWPCL because it engaged Plaintiff to work, allowed Plaintiff to work, suffered and permitted Plaintiff to work, and instructed Plaintiff to be presented at a work site both in Maryland and in the District of Columbia.

95. At all times relevant hereto, Defendant required Plaintiff to engage in certain training, including APCO training, which Defendant permitted and/or required Plaintiff to perform from her home in the District of Columbia.

96. The vast majority of the training hours Plaintiff provided to Defendant were

performed from her home in the District of Columbia.

97. Pursuant to the DCWPCL, all employers must pay all employees all wages due for work that the employee performed before the end of their employment on or before the first business day following a termination or on or before the seventh day following a resignation or the next regular pay day, whichever is earlier.

98. From July 11, 2022 to August 1, 2022, Defendant failed to pay Plaintiff the required federal, state, and local minimum wage, as well as the specific wage promised to Plaintiff, for all hours worked.

99. Defendant only paid Plaintiff for 5 of the over-58 hours of work she performed for Defendant during that time.

100. Payment for all wages due to Plaintiff was required on August 2, 2022 because the adverse employment action Defendant took against Plaintiff took place on August 1, 2022, but in no event later August 6, 2022 in the event it is determined that Plaintiff resigned.

101. Defendant failed to pay Plaintiff for all wages due on or before August 6, 2022.

102. Defendant has acknowledged that it has a pattern and practice of not paying employees for certain types of training, including APCO training, that employees, including Plaintiff, are required to perform as part of their employment.

103. Defendant's federal contract is subject to the SCA, which establishes that Defendant must compensate employees for any training they receive that is required for the contract.

104. APCO training was required for Defendant's contract with the Government, therefore it was required to be compensated for all employees taking the training.

105. Defendant knowingly, willfully, or in reckless disregard, carried out its illegal

practice of not paying for employee training hours.

106. Defendant's failure to pay wages lawfully owed to employees was neither reasonable, nor was the decision not to pay wages made in good faith. To the contrary, the non-payment was made in bad faith, particularly in light of the fact that multiple representatives of Defendant informed Plaintiff that she would be paid for her training in writing.

107. As a result of Defendant's violation of the DCMWA and willful non-payment of wages, Plaintiff is entitled to recovery of her unpaid wages, plus liquidated damages, attorneys' fees, and costs.

108. Defendant's failure to pay Plaintiff all wages due to her is not a result of a bona fide dispute. The failure to pay is in direct conflict with written statements by multiple representatives of Defendant with authority to bind the company. In addition, as a federal contractor with a contract subject to the SCA, Defendant has a duty to understand the wage payment requirements of the SCA at all times and knew or should have known that all training is required to be compensated.

## COUNT VI – ABUSIVE DISCHARGE

109. Plaintiff incorporates by reference Paragraphs 1 through 108 of this Complaint as if fully set forth and restated herein.

110. The MWHL prohibits employers from taking adverse action against an employee because the employee makes a complaint that the employee has not been paid in accordance with the MWHL. MD. CODE ANN. LAB. & EMPL. § 3-428 (b)(1)(iii)(1).

111. At all times relevant hereto, the obligation that an employer pay an employee for all wages due under applicable law is a fundamental and strong public policy of the state of Maryland, and the MWHL and its provisions represent a clear mandate of Maryland public policy.

112. At all times relevant hereto, Defendant "employed" Plaintiff for purposes of the MWHL because it engaged Plaintiff to work, allowed Plaintiff to work, and instructed Plaintiff to be present at a work site both in Maryland and in the District of Columbia.

113. Pursuant to the MWHL, each employer must pay employees at a rate that is no less than the Maryland minimum wage, currently $12.50 per hour and the Montgomery County, Maryland minimum wage for large employers (over 50 employees), currently $15.65 per hour.

114. From July 11, 2022 to August 1, 2022, Defendant failed to pay Plaintiff the required federal, state, and local minimum wage, as well as the specific wage promised to Plaintiff, for all hours worked.

115. Defendant has acknowledged that it has a pattern and practice of not paying employees for certain types of training, including APCO training, that employees, including Plaintiff, are required to perform as part of their employment.

116. Defendant's federal contract is subject to the SCA, which establishes that Defendant must compensate employees for any training they receive that is required for the contract.

117. APCO training was required for Defendant's contract with the Government, therefore it was required to be compensated for all employees taking the training.

118. Defendant knowingly, willfully, or in reckless disregard, carried out its illegal practice of not paying for employee training hours.

119. On or around July 30, 2022, Mr. Runnels spoke with Plaintiff by telephone. He informed Plaintiff, contrary to his and Ms. Pederson's prior statements, that Defendant would not pay Plaintiff for the APCO training until after she had passed the APCO exam (which had been postponed). To refuse to pay Plaintiff for hours worked on behalf of Defendant violated the

MWHL.

120. The failure to pay Plaintiff during her employment created a substantial financial hardship on Plaintiff, so much so that Defendant's failure to pay in accordance with applicable law left Plaintiff with no choice but to resign from her employment. The lack of payment made her employment untenable and intolerable and constitutes a constructive discharge under Maryland law.

121. Memorializing the constructive discharge, on or about July 30, 2022, Plaintiff sent an email to Defendant that said "[e]ffective 07/30/2022, I'm resigning from the Dispatcher position due to no pay. . . . This process has caused me a significant loss of income and daycare arrangements that wasn't expected. . . . This process has been lengthy with numerous trainings and to not be paid is unacceptable."

122. On or about July 31, 2022, Plaintiff reported to Mr. Runnels that she could not continue to work for Defendant without pay.

123. On or about August 1, 2022, Mr. Runnels responded and again informed Plaintiff that she would not be paid for the APCO training if she did not complete the final examination but requested that she reconsider her resignation.

124. By return email, Plaintiff indicated that she was willing to discuss continued employment by Defendant if Defendant agreed to pay her in accordance with applicable law.

125. That same day, August 1, 2022, Ms. McCoy notified Plaintiff that Defendant was revoking her offer of employment. In addition, Ms. McCoy confirmed that Defendant would not pay Plaintiff for 45-46 hours of APCO training. Ms. McCoy explained that Defendant considered the APCO training to be "pre-employment" training, despite the fact that it occurred after Plaintiff had been onboarded and became an employee of Defendant and despite multiple representatives

of Defendant affirming in writing that the APCO training would be paid for.

126. Both the constructive discharge and the alleged revocation of Plaintiff's offer of employment were adverse employment actions that amounted to a discharge or termination.

127. The basis for the constructive discharge and alleged revocation of Plaintiff's offer of employment, i.e., the non-payment of wages due to Plaintiff and her written complaints about the same, violated a clear mandate of public policy, specifically the requirement that employers pay employees all wages due and not terminate employees for enforcing that requirement.

128. There was a clear nexus between the constructive discharge and the alleged revocation of Plaintiff's offer of employment, on one hand, and Defendant's non-payment of wages, on the other hand, as evidenced by the fact that the non-payment of wages was the specific reason Plaintiff's employment by Defendant was intolerable and untenable and Ms. McCoy revoked Plaintiff's offer of employment in response to a complaint about the non-payment of wages.

129. As a direct and proximate result of Defendant's abusive discharge of Plaintiff, Plaintiff suffered damages, including lost income and benefits, emotional distress, and other damages.

130. Defendant's abusive discharge of Plaintiff was done without any legal justification or excuse and with the intent to deprive Plaintiff of rights guaranteed by Maryland law, justifying an award of exemplary and/or punitive damages.

## **AD DAMNUM**

WHEREFORE, Plaintiff, LaShawn Potts, demands judgment against Defendant, Excalibur Associates, Inc., and requests that this Honorable Court enter a judgment for:

(a) Damages in an amount that exceeds $75,000.00, plus pre- and post-judgment interest,

liquidated damages, attorneys' fees, and costs, plus punitive damages in an amount to be determined at trial, but not less than $100,000.00; and

(b) Upon proper motion filed hereafter, preliminary and permanent injunctive relief against Defendant precluding Defendant from engaging in the challenged pay practice described herein and compelling Defendant to reinstate Plaintiff to her position with full back pay; and

(c) Any and all other relief this Honorable Court deems necessary and appropriate under the circumstances.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues raised in this Complaint.

Respectfully submitted,

Dated: August 26, 2022

/s/ Matthew E. Feinberg
Matthew E. Feinberg (CPF No. 0812160262)
*mfeinberg@pilieromazza.com*
PILIEROMAZZA PLLC
1001 G Street, N.W., Suite 1100
Washington, D.C. 20001
Ph: (202) 857-1000
Fx: (202) 857-0200

*Attorneys for Plaintiff, LaShawn Potts*