IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LASHAWN POTTS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:22-cv-02565-PX |
| EXCALIBUR ASSOCIATES, INC., | * | |
| Defendant. | * | |

\*\*\*

## MEMORANDUM OPINION

Pending before the Court is the motion to dismiss or compel arbitration filed by Defendant Excalibur Associates, Inc. ECF No. 2. The motion is fully briefed, and no hearing is necessary. D. Md. Loc. R. 105.6. For the following reasons, the Court GRANTS the motion to compel arbitration and DISMISSES the Complaint.

**I.   Background[1]**

On July 11, 2022, Excalibur Associates, Inc. ("EAI") hired Plaintiff LaShawn Potts as a Dispatcher at the National Institute of Standards & Technology under EAI's contract with the agency. ECF No. 6 ¶ 6. Potts' offer letter stipulated that her "position and all compensation/benefits are covered by the SPFPA Union Collective Bargaining Agreement (CBA)" which "becomes effective on your first day working for EAI." ECF No. 3-1 at 5. The CBA and its Site Specific Addendum (the "Addendum") specified wage rates for the Dispatcher position, although the version filed with the Court appears to be outdated and does not list the rate applicable during Potts' employment with EAI. *Id.* at 18, ECF No. 13-1 at 5. The CBA also specified that employees would be paid at a regular rate for completing required trainings during

---

[1] The Court considers the facts both in the Complaint and in documents incorporated into the Complaint, and construes the facts in the light most favorable to Plaintiff LaShawn Potts. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

their employment. ECF No. 3-1 at 31–32. The CBA also mandated a specific grievance procedure, to include binding arbitration, to resolve "any and all disputes" arising out of the employment relationship. *Id.* at 24.

The offer letter stated that Potts would be paid at a rate of $26.75 per hour, plus $4.23 per hour in health and welfare benefits, and that she would receive a paycheck on the 6th and 21st of every month. ECF No. 6 ¶ 8–9; ECF No. 3-1 at 5. The letter also stated that Potts would be paid $15.00 per hour for pre-employment training unless she failed to complete or pass the required trainings. ECF No. 6 ¶ 10; ECF No. 3-1 at 5.

Prior to her start date, EAI informed Potts that she could complete one of these required trainings, APCO training, any time during the first six months of her job. ECF No. 6 ¶ 16. On July 18, 2022, one week after Potts completed the onboarding process, Leo Runnels, EAI's Vice President of Operations, directed Potts to begin the APCO training and told her that she would be paid for 40 hours of time spent on the class. *Id.* ¶¶ 11–12, 17. Potts ultimately spent 55 hours on training through August 1, 2022, in addition to spending 3 hours on other employment related tasks. *Id.* ¶ 18.

Potts, however, was not paid on her first designated pay date, July 21. *Id.* ¶ 21. After asking about this, Potts was told on July 30 that she would not receive any pay unless and until she passed the APCO exam. *Id.* ¶ 22–23. To complicate matters, the APCO exam had been postponed. *Id.* Because the delay in pay caused Potts significant hardship, she emailed her resignation later that day. *Id.* ¶ 25. Two days later, Runnels asked Potts to reconsider her resignation yet also reiterated that EAI would not pay her until she passed the APCO exam. *Id.* ¶ 27. Potts countered that only if EAI could pay her "in accordance with applicable law" could she stay with EAI. *Id.* ¶ 29.

Later that day, EAI reversed course. It revoked Potts' offer of employment and notified her that she would not be paid for her "'pre-employment' training." *Id.* ¶ 30. EAI ultimately paid Potts for 5 hours of work at a rate of $26.75 per hour, for a total of $133.75, but did not pay her for the time spent in APCO training. *Id.* ¶ 33.

On August 26, 2022, Potts filed suit against EAI in the Circuit Court for Montgomery County. ECF No. 6. Potts alleged that in failing to pay her for the time that she worked on the training, EAI violated the Fair Labor Standards Act ("FLSA"), Maryland Wage and Hour Law ("MWHL"), Maryland Wage Payment and Collection Law ("MWPCL"), District of Columbia Minimum Wage Act ("DCMWA"), and District of Columbia Wage Payment and Collection Law ("DCWPCL"). *Id.* Potts also brought a common law abusive discharge claim. *Id.*

EAI timely noted removal to this Court on October 6, 2022. ECF No. 1. One week later, EAI moved to dismiss or compel arbitration. ECF No. 2. EAI contends that all of Potts' claims are subject to CBA's mandatory arbitration provision, and thus, are improperly before this Court. ECF No. 3 at 2. Because Potts was required to submit her claims to arbitration under the CBA, the Court will grant EAI's motion to compel arbitration and dismiss the Complaint.

**II.    Standard of Review**

EAI moves for relief under Federal Rule of Civil Procedure 12(b)(6) and does not specify a separate review standard for motions to compel arbitration. ECF No. 3 at 6–8. Potts argues that a motion to compel arbitration may be considered under Rule 12(b)(1) or Rule 12(b)(6). ECF No. 8 at 11. To be sure, some courts in this district have considered motions to compel arbitration under both Rules 12(b)(1) and 12(b)(6), *see Lomax v. Weinstock, Friedman & Friedman, P.A,* No. CCB-13-1442, 2014 WL 176779, at *2 (D. Md. Jan. 15, 2014), *aff'd sub nom. Lomax v. Weinstock, Friedman & Friedman, P.A*, 583 F. App'x 100 (4th Cir. 2014)

3

("Courts have found it proper to dismiss claims subject to arbitration agreements under both Rule 12(b)(1) and Rule 12(b)(6)."), while other courts have considered motions to compel arbitration as "exist[ing] in the netherworld between a motion to dismiss and a motion for summary judgment," *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004).

In the Fourth Circuit, the appropriate standard "is akin to the burden on summary judgment." *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015); *see also Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011). Accordingly, the Court should grant the motion if non-movant fails to "show genuine issues of material fact regarding the existence of an agreement to arbitrate." *Chorley Enters.*, 807 F.3d at 564. And under any of the articulated standards, the Court may consider the offer letter, CBA, and Addendum as they are all integral to the Complaint and Potts does not dispute their authenticity. ECF No. 6 ¶ 7; ECF No. 3-1 at 5, 18; *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); Fed. R. Civ. P. 56; *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

### III. Analysis

Although EAI does not cite the Federal Arbitration Act ("FAA") in its motion to compel arbitration,[2] the Court considers the motion as one filed under the FAA, 9 U.S.C. § 4. *Cf. Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (confirming that the FAA generally covers employment contracts and "exempts…only contracts of employment of transportation workers"); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 260 (2009) (finding an arbitration provision in a collective bargaining agreement to be enforceable under the FAA). Under the FAA, the movant seeking to compel arbitration must demonstrate the existence of (1) a dispute between the

---

[2] EAI argues for the first time in its reply that the FAA applies. ECF No. 13 at 16–17.

parties; (2) a written arbitration provision that purports to cover the dispute; (3) a relationship between the transaction and interstate or foreign commerce; and (4) the failure of a party to arbitrate the dispute.  *See Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).

Potts does not challenge the existence of a dispute between the parties, the relationship to interstate commerce, or the failure to arbitrate.  Potts contends only that the arbitration provision in the CBA does not cover her claims.  ECF No. 8 at 37.

Potts first argues that the CBA does not cover the claims because "Dispatchers" are not referenced as covered employees in the CBA.  ECF No. 8 at 15.  But the CBA plainly specifies that "employees" covered under the agreement include those working in positions "listed in the Site Specific Addendums."  ECF No. 3-1 at 11.  Further, the Addendum to Potts' CBA applies to the "Dispatcher" position.  ECF No. 13-1 at 5.  Thus, because the CBA incorporates the Addendum, the CBA reaches the claims.

Potts next argues that the CBA does not apply because EAI neither told her that her position was covered by the CBA nor gave her a copy of the agreement.  ECF No. 8 at 17.  But Potts *was* told in her offer letter that the CBA covered her position and that it took effect on her first day of work.  ECF No. 3-1 at 5.  As to her argument that EAI was required to provide a copy of the agreement itself, the Fourth Circuit has already rejected an analogous contention that an employer must provide a translation of a CBA to non-English speaking employees to satisfy individual consent.  *See Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 215 (4th Cir. 2007).  The Court reasoned that because "[a]cceptance by individual union members of individual provisions is not required," as CBAs are collectively negotiated, the employer simply does not have the obligation to furnish each employee with his or her own copy of the CBA to render it valid and binding.  *Id.*; *see also Carson v. Giant Food, Inc.*, 175 F.3d 325, 331 (4th Cir.

1999) (CBAs "are valid and binding on unionized employees.").

Potts next argues that the arbitration provision in the CBA is void and unenforceable because it violates pre-existing Maryland law. ECF No. 8 at 37. Specifically, Potts contends that because the CBA's binding arbitration provision covers claims under Title VII of the Civil Rights Act of 1964, it violates a Maryland statute that prohibits mandatory arbitration for sexual harassment claims. *Id.*; Md. Code Ann., Lab. & Empl. § 3-715(a) (declaring that any provision in an employment contract "that waives any substantive or procedural right" to pursue a sexual harassment or retaliation claim "is null and void as being against the public policy of the State").

Potts is correct that sexual harassment claims are included in the claims for which the CBA compels arbitration. Even so, the United States Supreme Court has made clear that "when state law prohibits outright the arbitration of a particular claim . . . [t]he conflicting rule is displaced by the FAA." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011). In other words, the existence of a Maryland statute prohibiting a type of claim in arbitration is of no moment so long as the FAA permits arbitration as to that claim.

Here, the FAA does make plain that arbitration shall not reach "a sexual harassment dispute or sexual assault dispute." 9 U.S.C. § 402. But otherwise, nothing in the FAA would impede Potts' claims—which do not involve sexual harassment—from proceeding to arbitration. Moreover, nothing in the Maryland law reaches any other kinds of claims, and if it did, the FAA preempts the state law. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) ("[S]tate law is preempted to the extent it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the FAA.") (citing *Concepcion*, 563 U.S. at 352); *Saturn Distrib. Corp. v. Williams*, 905 F.2d 719, 722 (4th Cir. 1990) (finding that the FAA preempted a statute prohibiting arbitration of claims arising out of auto dealership agreements). The

arbitration clause is enforceable as to Potts' claims.

Lastly, Potts argues that the CBA arbitration clause does not reach her state and federal statutory claims because the contract language is vague and overbroad. ECF No. 8 at 39. When a collective bargaining agreement waives employees' rights to pursue statutory claims in a judicial forum, "such a waiver must be clear and unmistakable." *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998). An overbroad arbitration clause that merely covers "all disputes concerning the interpretation of the agreement" does not suffice. *Carson*, 175 F.3d at 332.

The arbitration clause in the CBA states that "any and all disputes" arising out of the employee's employment—"whether grounded in contract, tort or statutory law"—will proceed by arbitration. ECF No. 3-1 at 24. The CBA also provides several illustrative examples of arbitrable claims, to include those pursued under "federal, state and local civil rights and employment laws such as…the Fair Labor Standards Act." *Id.* This language is sufficiently "clear and unmistakable" to cover Potts' federal and state statutory claims. *See also Petrus v. KR Contracting, Inc.*, No. GJH-20-3259, 2022 WL 374525, at *5 (D. Md. Feb. 7, 2022) (finding that the same exact arbitration provision clearly and unmistakably covered plaintiff's Americans with Disabilities Act and Family and Medical Leave Act claims). Indeed, contrary to Potts' contention, the arbitration clause in this case is far more specific than that which courts have previously found sufficient. *See Aleman*, 485 F.3d at 216 (finding an arbitration clause that covered "federal, state, and local anti-discrimination laws" to be sufficiently clear and unmistakable); *Singletary v. Enersys, Inc.*, 57 F. App'x 161, 164 (4th Cir. 2003) (finding sufficient an arbitration clause that covered disputes under "federal or state employment law"); *cf. Trs. of IUPAT Dist. Council No. 51 Health and Welfare Fund v. DeWayne Custom Painting, Inc.*, No. DKC-07-3216, 2009 WL 10737185, at *6 (D. Md. Feb. 2, 2009) (citing *Singletary* as

7

providing an example of a clear arbitration clause, as compared to an insufficiently specific clause in this case). The Court, therefore, finds that the arbitration provision in the CBA covers Potts' claims.

### IV.   Conclusion

Because the CBA arbitration provision covers Potts' claims, she must pursue the claims in that forum. Moreover, because all claims must proceed in arbitration, the Court will dismiss the Complaint without prejudice. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). The Court declines to reach EAI's alternative grounds for dismissal.

A separate Order follows.


5/3/2023                                                            /S/
Date                                                                Paula Xinis
                                                                    United States District Judge